THE PEOPLE, *ex rel.* Lefever, *vs.* THE BOARD OF SUPERVISORS OF THE COUNTY OF ULSTER.

The proceedings by mandamus are not affected by the code, but must be regulated by the rules of pleading and practice prevailing previous to its adoption.

The return to the writ must set forth the title or justification of the defendant for not doing the act, the performance of which is sought to be enforced by the writ.

It should state all the material steps taken by the defendant, just as they occurred; and should, in itself or by express adoption of the allegations in the writ, either in whole or in part, state the case which makes out the defendant's justification.

Such return may set up any number of facts, constituting as many good reasons for not performing the act which the writ seeks to compel; provided they exist in point of fact.

The argument *ab inconvenienti* is never of very great weight; of none against the positive injunctions of a statute.

The law having said that the justice before whom proceedings for the re-assessment of damages occasioned by the laying out of a highway are instituted, shall consummate them, the mandate must be obeyed; and the absence of such justice, so that he cannot be found, or induced to certify the verdict of the jury, in the form required by the statute, will not authorize another justice to certify the verdict.

THE relator sued out an alternative mandamus, requiring the defendants to audit and levy the sum of $990 damages, re-assessed to the relator, for the laying out of a highway over his premises, or show cause &c. The writ alleges the laying out of the highway—the assessment of the damages therefor, by commissioners; that the relator, feeling aggrieved, served a notice under § 85, 2 *R. S.*, 397, *5th ed.*, asking for a jury to re-assess the damages, and specify a time when the jury would be drawn. That a jury was drawn pursuant to the notice, a list of whom was delivered to the relator, who delivered the same to "*a justice of the peace of the town of New Paltz*," where the road was situated; who issued his summons to a constable, directing him to summon the jurors, and specify a time and place at which they would meet. That at the time and place specified "*the justice who issued the summons*" did draw by lot six of the persons attending to serve as a jury, who were sworn "*by the said justice:*" heard the testimony of such witnesses as were offered by the parties, and sworn "*by the justice,*" and rendered their verdict in writing, which was certified "*by the justice,*" whereby they determined and re-assessed the damages of the relator at $990. That the verdict was duly laid before the board of supervisors, &c. who refused to audit the same, &c.

The answer or return of the defendants alleged, 1. That the town of Plattekill, within which the jury were (to be) drawn was not an adjoining town to New Paltz in which the highway was situated; 2. Denied that the town clerk deposited in a box the names of all such persons residents of the

town, who were not interested in the lands, nor of kin to either of the parties; 3. Alleged ignorance of the list from which the names were drawn, but alleged that one of the names drawn was that of Wellington Baxter, then and for a long time a resident of Newburgh, in the county of Orange, and not of Plattekill; and 4. Denied that Lefever delivered the certificate to a justice of New Paltz, alleged that the town clerk's certificate of the drawing of the jury was delivered to Philip S. Hasbrouck, of New Paltz, who was not a justice of said town, who issued the summons and attended to the drawing and swearing of the jury and witnesses, and that such summons was not issued, nor was such jury attended and sworn by any justice of the peace of the town of New Paltz; that only ten of the jurors appeared; that two of the six drawn were peremptorily challenged and objected to as partial, and biased in favor of Lefever, but were admitted and acted as jurors. That after all the witnesses produced by the relator, before the jury, had been sworn by said Philip S. Hasbrouck, claiming to act as justice of the peace, and they had been examined before the jury, the said Philip S. Hasbrouck, who had theretofore claimed to act as justice of the peace aforesaid, refused to swear the witnesses produced on the part of the commissioners of highways of New Paltz aforesaid, and the jury went on and assessed the damages upon the testimony thus before them; and 5. Denied that the verdict of the jurors was certified to by the said Philip S. Hasbrouck, who claimed to act as justice of the peace, as aforesaid, and claims said re-assessment to be irregular and void. They set up a further defense, not material to be here considered, that subsequently a certiorari was sued out from the supreme court to review such re-assessment, and the supervisor regarded the same as thereby removed from their jurisdiction, and did not act upon the same, but returned the papers to the supervisor of New Paltz, and had not in their possession any papers by which they could audit and collect the required damages.

The relator, in his reply, 1. Denied the allegation in the return that Wellington Baxter was a resident of Newburgh, and concluded to the country. 2. Denied the allegation that Hasbrouck refused to swear the witnesses of the commissioners, and concluded to the country. 3. As to the allegation that the verdict of the jury was not certified to by said Philip S. Hasbrouck, the relator alleged that he ought not to be thereby barred, &c. because the commissioners of highways objected to the authority of Hasbrouck to act in said proceeding, and craftily and artfully procured him, the said Philip S. Hasbrouck, to refuse to sign the certificate, for the sole purpose of interrupting the proceedings and preventing the re-assessment. And the said Philip S. Hasbrouck thereupon (by the procurement of the commissioners and against the will of the said Abraham P. Lefever) absented himself from the place, and could not be found or induced by said Lefever to certify the verdict of said damages. Thereupon Henry Burnett, a justice of the peace of said town of New Paltz, who attended the said proceeding as justice, certified the verdict of the jury in the form prescribed by statute; and this he is ready to verify: wherefore he prays judgment. 4. He alleged that the certiorari aforesaid was, before the damages were laid before the board of supervisors superseded, and concluded with a verification. 5. Denied all the other allegations in the return, and concluded to the country.

To the reply above set forth and marked 3, the defendants demurred, and for cause of demurrer alleged; *First.* That the replication is a departure from and inconsistent with the allegations in the mandamus; it being alleged in the mandamus that the verdict of the jury was certified to by the justice who issued the summons and drew the jury; whereas, in the replication, it is admitted and alleged that the verdict was certified by another justice—Henry Burnett—and not by Philip S. Hasbrouck. *Second.* That it does not show a compliance with the statute, as it does not show or allege that the verdict was certified by the same justice who issued the

The People *v.* The Supervisors of Ulster.

summons and drew the jury. *Third.* That the replication shows that the statute was not complied with, and that the verdict was not certified by the justice who issued the summons and drew the jury.

The plaintiff joined in demurrer, at the hearing. At special term, the court gave judgment for the plaintiff on demurrer, with leave to the defendants to reply on payment of costs; from which order the defendants appealed to the general term.

*E. Cooke,* for the plaintiffs.

*M. Schoonmaker,* for the defendants.

*By the Court,* HOGEBOOM, J. The proceedings by mandamus are not affected by the code, but must be regulated by the rules of pleading and practice prevailing antecedent thereto. (*Code,* § 471.) The writ must set forth, in substance, the title of the relator, and show a good reason for issuing the mandamus. (*People* v. *Ransom,* 2 *Comst.* 490. *People* v. *Supervisors of Westchester,* 15 *Barb.* 608.) In this instance the writ appears to do so. The return must set forth the title or justification of the defendants for not doing the act, the performance of which is sought to be enforced by the writ. It must of course, in order to be available, set up a good and available defense or justification. The legal effect of the proceedings turns upon the allegations, in the return, of the subsequent proceedings. The return is supposed to set forth, and should set forth, all the material steps taken by the defendants, just as they took place. It should in itself or by express adoption of the allegations in the writ, either in whole or in part, state the case, which makes out the defendants' justification. (3 *R. S.* 898, *5th ed.*) There is no provision for a *demurrer* to the writ, though for certain purposes it has the effect of a pleading; for example, when a demurrer is made to a return, the defendant may still have judgment, notwithstanding its insufficiency, if the writ be substantially

defective. (*People* v. *Supervisors of Fulton,* 14 *Barb.* 52. *People* v. *Ransom,* 2 *Comst.* 490.) It is true, also, the defendant may, without a direct demurrer to the writ, have the benefit of such a demurrer by a motion to quash. (*Commercial Bank* v. *Canal Commissioners,* 10 *Wend.* 25.) The return is to be considered an *entirety.* (*The People* v. *Vail,* I *Wend.* 38.) I do not see why it may not set up any number of facts, constituting as many good reasons for not performing the act which the writ seeks to compel, provided they exist in point of fact. In this case the defendants undertake to allege three different defenses; one turning on the mode of making up the jury, and the members of which it was composed; another, (the one now in question) that the person officiating as justice, who initiated the proceedings, who issued the summons, who drew the jury and who swore the witnesses, did not consummate them by certifying the verdict; a third, that the proceedings were removed by certiorari into the supreme court, and thus placed beyond the jurisdiction of the supervisors. It is with the second defense alone that we have any concern on the present occasion; and I think, on the whole, the defense a sound one and well pleaded in the return. I say *on the whole,* because there is no *express* denial, in the return, of the allegation in the writ that the justice who issued the summons certified the verdict; but I think there is a sufficient denial by implication, by the averment of facts inconsistent with such a theory. For the return, in substance, alleges that Philip S. Hasbrouck was the officiating magistrate who issued the summons and conducted the proceedings, though he did not make the final certificate. And if no other legally could do so, then the officer who received the original jury list, as the defendants contend, or if such person was not in fact a justice of the town as the defendants also allege, then the defense is substantially complete. And I think the statute in substance requires, 1. That the town clerk shall deliver the jury list to the party seeking the reassessment of damages; and 2. That *such* justice shall

issue the summons, draw the jury, swear the witnesses, and *certify* the verdict. That verdict, *thus authenticated,* is final, and furnishes to the supervisors the recognized authority for assessing the damages. (3 *R. S.* 398, 399, § 86 *to* 93, *5th ed.*) To this *specific* defense, thus set up, the relator does not demur, but conceding its legal sufficiency, attempts to avoid its effect by plea; which plea is, in substance, that the commissioners of highways craftily and artfully procured the said Philip S. Hasbrouck to refuse to sign the certificate, in order to prevent the reassessment, and to absent himself so that he could not be found or induced to certify the verdict, and thereupon, in this dilemma, Henry Burnett, a justice of New Paltz attending said proceeding, certified the verdict in the form required by the statute. To this plea the defendants demurred; the demurrer was overruled at special term, and the defendants appealed to this court. The judge at special term entertaining great doubt on the question, on the ground that otherwise the relator would be without remedy, and that the certificate is a merely ministerial act. The argument *ab inconvenienti* is never of very great weight; of none against the positive injunctions of a statute. The law has said that the justice who initiated the proceedings shall consummate them, and I think the mandate must be obeyed. The contingency here presented must be of most unfrequent occurrence, and if any remedy is needed, it must be applied by the legislature. Nor can it be regarded as a very injudicious requisition, that the justice who has supervised the proceedings from beginning to end, and who has therefore personal knowledge of their regularity and correctness, or the contrary, should be the person whose certificate should be necessary to stamp them with authority. We should scarcely allow any justice other than the one who issued the summons in a civil action, and presided at the trial, to enter the judgment upon the verdict. The act in question is in some sense a *ministerial* act; not more so than that of the justice who enters the judgment upon the verdict of a jury, so far as the damages

are concerned. He has no discretion in regard to them; he cannot alter them; and if he should *refuse* to enter the judgment, the proceeding must fall to the ground.

I am not forcibly impressed with the argument which seeks to gather the power for another justice to act in the contingency supposed, by the plea, from that provision of the statute which authorizes a special proceeding to be continued before another officer, in case of the death, sickness, resignation, removal from office, absence from the county, or other disability of the one before whom it was commenced. (3 *R. S.* 475, § 29, *5th ed.*) Obviously none of these exigencies have occurred, unless it be that of *disability.* Disability implies want of power, not want of inclination. It refers to incapacity, and not to disinclination. It is founded upon a want of authority arising out of some circumstance or other, not withstanding the presence of any amount or degree of willingness or disposition to act.

The order of the circuit and special term was erroneous, and must be reversed with costs; and there must be judgment for the defendants on the demurrer, with leave to the plaintiffs to amend their plea on payment of costs.

